IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

OSCAR SALINAS MOYA,           )
                              )
          Petitioner,         )
                              )        1:09CR329-1
          v.                  )        1:13CV1056-1
                              )
UNITED STATES OF AMERICA,      )
                              )
          Respondent.          )

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Petitioner, Oscar Salinas Moya, a federal prisoner, has filed a motion seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 87.)[1] Petitioner, in pertinent part, was indicted for, and pled guilty to, conspiracy to distribute 500 grams or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B), and for the possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (Docs. 3, 28, and 42; 12/8/2009 Minute Entry.) He was sentenced to 120 months of imprisonment. (Doc. 73.) Petitioner did not appeal. (Doc. 87, ¶ 8.) He then filed the instant motion and a supporting memorandum. (Docs. 87, 88.) The Government filed a response (Doc.

---

[1] All citations are to the docket in the criminal case, 1:09CR329-1.

100), and Petitioner filed a reply (Doc. 104) and a motion for an evidentiary hearing (Doc. 105). The parties also filed supplemental briefing pursuant to this court's order. (Docs. 119, 121, 124, and 125.) Petitioner's § 2255 motion is now ready for consideration.

## II. BACKGROUND

### A. Petitioner's Claim

Petitioner raises a single claim that he is entitled to relief because he is actually innocent of aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime as set forth in 18 U.S.C. §§ 924(c) and 2. (Doc. 88 at 12.) As explained below, this claim is without merit.

### B. Facts

#### 1. Rule 11 Hearing

At his Rule 11 hearing, Petitioner was informed of the relevant elements of the charge of possession of a firearm in furtherance of a drug trafficking crime and of aiding and abetting that offense. Specifically, the court informed Petitioner:

> In Count Three, you are charged with a violation of Title 18 of the U.S. Code, Section 924(c)(1)(A)(i) and aiding and abetting. The Government would be required to prove that on or about August 21, 2009, in furtherance of a drug trafficking crime for which you may be prosecuted in a court of the United States, that is, the crime charged in

2

Count One, conspiracy to distribute cocaine hydrochloride in violation of Title 21 of the U.S. Code, Section 846 and in violation of Title 21 of the U.S. Code, Section 841(a)(1), you knowingly possessed firearms, that is, an Astra .45-caliber pistol, Model A-100, Serial Number W1650, and a Smith & Wesson .40-caliber pistol, Model SW40VE, Serial Number PBM6644.

You are also charged with aiding and abetting. The Government must show that you aided, abetted, counseled, commanded, induced, or procured the commission of this offense or willfully caused an act to be done which, if directly performed by you, would constitute this offense.

(Doc. 79 at 20-21.)

During that hearing, defense counsel reviewed the plea agreement and stated that Petitioner was "admitting that it was foreseeable to him as an aider and abettor that the two other participants in the conspiracy would have firearms with them during the drug trafficking offense." (Id. at 9.) The court later asked Petitioner if "that [was his] understanding of the terms of [his] plea agreement?" and Petitioner stated "Yes." (Id. at 10.)

During this same plea hearing, defense counsel also stated that Petitioner was pleading guilty to the 18 U.S.C. § 924(c) count based on aiding and abetting, and added:

Yes, sir, Your Honor, and the factual basis supports the plea to Count One and the conspiracy. I would simply add with regard to Count Three that [Petitioner] admits that he aided and abetted the possession of the firearms by the other two individuals knowing

3

> that it was foreseeable they would be there.
> Although he did not actually possess them, he
> is certainly admitting to aiding and abetting
> and the reasonable foreseeability that they
> would be found there prior to the drug
> transaction.

(Id. at 21-22.)

Petitioner told the court, under oath, that he understood all of the elements of these offenses; that he was pleading guilty to these offenses; that he was pleading guilty because he was in fact guilty; and that he understood that by pleading guilty, he was admitting each of the elements of the offenses. (Id. at 21.) The court then found that Petitioner was competent and capable of entering an informed plea; that he was aware of the nature of the charges and the consequences of the plea; and that his plea of guilty was knowing and voluntary. (Id.)

The court also had defense counsel review the factual basis with Petitioner along with the interpreter, Dr. Ernest Lunsford. (Id. at 23.) That factual basis can be adequately summarized as follows. On August 20, 2009, Petitioner agreed to sell one kilogram of cocaine hydrochloride to an undercover detective in Greensboro. (Doc. 28 at 1.) Petitioner served as a middle man for the transaction, and when the source of the cocaine arrived, the source aborted the transaction after observing police undercover cars in the area. (Id. at 1-2.) That night, Petitioner

4

contacted the undercover detective to ask if he was still interested in purchasing cocaine. (Id. at 2.) Petitioner explained that another source from Raleigh was willing to bring a kilogram of cocaine to Greensboro the next morning. (Id.)

On August 21, 2009, Petitioner met the detective at a McDonald's restaurant. (Id. at 3.) After Petitioner saw and counted the buy money, he called the source who arrived in a Mercury Marquis. (Id. at 3-4.) The passenger of the Marquis – the source and one of Petitioner's co-conspirators – got out of the car and removed a package from the trunk to the back seat. (Id.) Petitioner then went to the back seat of the Marquis with a back pack, filled it with one kilogram of cocaine, and returned to the detective. (Id.) At this time, nearby officers moved in and made the arrests. (Id. at 4.)

The investigation revealed that the source was Herminio Alcantar-Ramirez. (Id. at 4-5.) Alcantar-Ramirez had provided a gun to the driver of the Marquis, Javier Sanchez-Garcia. (Id.) At the time of arrest, officers witnessed Sanchez-Garcia bending over as if to retrieve something from under the seat in front of him, initially refusing to obey the officers' commands to show his hands. (Id. at 4.) After Sanchez-Garcia complied with the officers' commands, the officers found a loaded Astra .45 caliber pistol under the driver's seat. (Id. at 4.) The officers also

5

found a loaded Smith & Wesson .40 caliber pistol in the glove box
in front of Alcantar-Ramirez. (Id.) After the arrest, Petitioner
admitted that he was going to receive $500 from Alcantar-Ramirez
for arranging the sale. (Id. at 5.)

When talking to the police after his arrest, Sanchez-Garcia
waived his Miranda rights in writing. (Id.) He explained that,
on August 20 (i.e., the day before the foregoing transaction
occurred), Alcantar-Ramirez put a bag containing cocaine in the
trunk of the car and gave Sanchez-Garcia a loaded gun. (Id.)
Alcantar-Ramirez put another gun in the glove box and said that
"black people like to rob." (Id.) Sanchez-Garcia noted that he
put the gun in his waistband originally, but when he saw the
police, placed the gun under the seat, fearing that the police
would shoot him if the police found the gun on his person. (Id.)

After Petitioner reviewed the factual basis with counsel,
defense counsel said that Petitioner had no objections to the
factual basis. (Doc. 79 at 23.) The court consequently found
that Petitioner's guilty plea was supported by an independent
factual basis, satisfying each of the essential elements of the
indictment. (Id.) The court also explained to Petitioner that a
written presentence report ("PSR") would be prepared prior to
sentencing; that Petitioner would be asked to provide information
for it; that his attorney could be present for that interview if

6

Petitioner so desired; and that Petitioner would have the opportunity to read the PSR and file any objections prior to sentencing. (Id. at 23-24.)

## 2. Sentencing Hearing

Subsequently, a PSR was prepared. Defense counsel furnished a signed statement to the U.S. Probation Office from Petitioner regarding his acceptance of responsibility, as follows:

> On August 21, 2009, I conspired with my two co-defendants named in this case to sell cocaine. The transaction was to begin at the McDonald's restaurant located on the corner of High Point and Holden roads in Greensboro. My two co-defendants were bringing the cocaine for the deal that day. Further, I had personal knowledge that, as a part of this drug transaction, my co-defendants would be bringing a firearm or firearms with them to protect the cocaine. I am truly sorry for what I did. I accept responsibility for my role in the drug conspiracy and for knowing that my co-defendants would have a gun or guns with them when they delivered the cocaine to Greensboro.

(Doc. 118 (PSR), ¶ 26.)

On August 13, 2010, the court conducted a sentencing hearing at which Petitioner, defense counsel, and an interpreter, Dr. Margo Bender, were present. (Doc. 80 at 1.) The court inquired about the PSR as follows:

> THE COURT: Did you receive a copy of the presentence report revised as of April 29, 2010?

7

DEFENSE COUNSEL: I have, Your Honor.

THE COURT: And have you reviewed it with your client?

DEFENSE COUNSEL: I have.

THE COURT: Are you prepared today to proceed with sentencing?

DEFENSE COUNSEL: We are.

THE COURT: Mr. Moya, have you reviewed the presentence report in your case?

THE DEFENDANT: Yes.

THE COURT: Did you review it with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied that you understand the contents of the report?

THE DEFENDANT: Yes.

THE COURT: Thank you, sir. You may have a seat, if you wish.

.  .  .  .

THE COURT: Are there any objections by either party to the presentence report?

ASSISTANT U.S. ATTORNEY: No, Your Honor.

DEFENSE COUNSEL: No, sir.

THE COURT: The Court will then adopt the presentence report without change, and as to all matters in the presentence report, the Court will adopt as findings of fact.

(Doc. 80 at 2-3.)

## II.  ANALYSIS

In order to overcome a procedural default, a § 2255 petitioner may show cause and prejudice, or that he is actually innocent of the convictions he challenges.  Bousley v. United States, 523 U.S. 614, 622-23 (1998).[2]  However, a claim of actual innocence does not by itself provide a basis for relief under § 2255.  Schlup v. Delo, 513 U.S. 298, 315 (1995) (explaining that a claim of actual innocence acts as "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits").  Therefore, if proven, Petitioner's claim of actual innocence would merely relieve him from his failure to raise on direct review the claim he now asserts under Rosemond and from § 2255's limitations period.[3]  McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations.").

In proving a claim of actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would

---

[2] Petitioner does not attempt to show cause or prejudice, only advancing a claim of actual innocence in support of his motion.

[3] The one-year limitation period set forth under 28 U.S.C. § 2255 (f) commenced on September 2, 2010, the date on which the judgment of Petitioner's conviction became final.  (Doc. 73.)  Petitioner filed his motion, however, on November 21, 2013.  (Doc. 88.)

have convicted him of the relevant crimes.  United States v. Jones, 758 F.3d 579, 583 (4th Cir. 2014).  To sustain a § 924(c)(1)(A) conviction, the Government must establish two elements: (1) that a defendant used, carried, or possessed a firearm and (2) did so in furtherance of a drug trafficking crime.  United States v. Jeffers, 570 F.3d 557, 565 (4th Cir. 2009).  A defendant is guilty of aiding and abetting if he has "knowingly associated himself with and participated in the criminal venture."  United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (quoting United States v. Winstead, 708 F.2d 925, 927 (4th Cir. 1983)) see also 18 U.S.C. § 2 (providing that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission" or "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal").

Additionally, where, as here, "a defendant is represented by counsel when making his guilty plea, that plea is presumed valid when later attacked in a habeas corpus proceeding. . . . [T]o rebut that strong presumption of validity, the defendant must make a factual showing that his plea of guilt was not voluntary and intelligent."  United States v. Custis, 988 F.2d 1355, 1363 (4th Cir. 1993) (citations omitted).  "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated,

10

and, similarly, findings by a sentencing Court in accepting a plea constitute a formidable barrier to attacking the plea." United States v. Wilson, 81 F.3d 1300, 1308 (4th Cir. 1996) (citations, quote marks omitted). Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district Court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Here, Petitioner fails to establish that he is actually innocent of the charge of aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime to which he pled guilty, or that his guilty plea was made unknowingly or involuntarily. As demonstrated above, when Petitioner pled guilty, he told the court - under oath - (1) that he understood all of the elements of the offenses; (2) that he was pleading guilty to these offenses because he was in fact guilty; and (3) that he understood that by pleading guilty, he was admitting each of the elements of the offenses. Petitioner also signed and submitted a statement indicating that he knew his co-conspirator would be bringing one or more firearms to the drug deal. Moreover, the factual basis and the excerpts from Petitioner's PSR

demonstrate that Petitioner was indeed guilty of aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime. Petitioner has presented no new evidence, beyond his conclusory assertions that his guilty plea was not entered into knowingly and voluntarily, to establish that he is actually innocent of the crimes to which he pled guilty.

This is insufficient, as Petitioner has not shown "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. Indeed, partially because of this standard, successful petitions of actual innocence have been deemed "extremely rare." Id. Petitioner's new evidence – his own affidavit – fails to meet this standard. "A reasonable juror surely could discount [petitioner's] own testimony in support of his own cause." McCray v. Vasbinder, 499 F.3d 568, 573 (6th Cir. 2007); Riggins v. Norris, 238 F.3d 954, 955 (8th Cir. 2001) (noting that court is "certainly entitled to disbelieve [defendant's] self-serving testimony"); Cuppett v. Duckworth, 8 F.3d 1132, 1139 (7th Cir. 1993) ("[W]e have repeatedly held that self-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions."); Clark v. Clarke, No. 7:14CV00042, 2017 WL 819500, at *5 (W.D. Va. Mar. 1, 2017) ("[R]ecanting affidavits are always

12

viewed with extreme suspicion.") (citations omitted).

Despite this, Petitioner contends that two cases demonstrate his actual innocence of the § 924(c) charge. Petitioner first cites United States v. Lomax, 293 F.3d 701 (4th Cir. 2002). (Doc. 88 at 17; Doc. 104 at 2.) In Lomax, the defendant contended that there was insufficient evidence to conclude that he possessed a firearm "in furtherance of" his drug trafficking activity. Lomax, 293 F.3d at 705. The Fourth Circuit disagreed and in doing so adopted a series of factors that might lead a fact finder to conclude that a connection existed between a possession of a firearm and a drug trafficking crime. Id. These factors include, but are not limited to "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. The "mere presence" of a firearm at the scene, however, is not enough to convict. United States v. Milbourne, 129 F. App'x 861, 868 (4th Cir. 2005) (unpublished) (collecting cases).[4] Petitioner asserts that because the firearms

---

[4] The Fourth Circuit "ordinarily do[es] not accord precedential value to [its] unpublished decisions" but accords them "only [] the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (internal quotation marks omitted).

were merely present at the scene of the drug deal and did not further it, he cannot be guilty of a § 924(c) offense, much less of aiding and abetting such an offense. (Doc. 104 at 3-4.)

This not a persuasive argument. Here, the factual basis and the PSR indicate that Alcantar-Ramirez and Sanchez-Garcia, Petitioner's co-defendants, drove to a drug deal in a vehicle with loaded, and easily accessible, firearms and a kilogram of cocaine. (Doc. 28 at 3-5; Doc. 118, ¶ 10.) Sanchez-Garcia even admitted that he and Alcantar-Ramirez brought the firearms to the drug deal in question to ensure no one robbed them of their cocaine. (Doc. 28 at 5.) Likewise, at the moment of arrest, Sanchez-Garcia was seen bending over as if to retrieve something from under the seat in front of him and initially did not obey commands to show his hands. (Id. at 4.) Eventually, he raised his hands and was arrested. (Id.) Under his seat, officers found a loaded .45 caliber pistol. (Id.) Sanchez-Garcia later admitted that he put the gun in his waistband originally, but when he saw the police he put it under his seat because he thought the police would shoot him if they found the gun on his person. (Id. at 5.) Consequently, Sanchez-Garcia did not just constructively possess the firearm, he was actually carrying it during the drug transaction.

Moreover, Petitioner concedes in his pleadings that his co-conspirators at the very least constructively possessed firearms

14

in furtherance of a drug trafficking crime. (Doc. 88 at 17-18 ("[I]t is an uncontested fact that both of Petitioner's codefendants . . . each had constructive possession of two separate guns. . . . Additionally, it is obvious that [Petitioner's co-defendants,] having never deal[t] previously with the [confidential informant] involved in the drug transaction, brought along their guns as a defense or deterrent . . . from [those] attempting to steal the drugs.").) Consequently, the firearms possessed by Petitioner's co-defendants "helped forward a drug trafficking crime" by enhancing the traffickers' security, while also decreasing the likelihood that the trio would be victimized themselves. Notably, the Lomax court specifically envisioned the circumstances of Petitioner's transaction and his co-defendants' stated reasons for possessing firearms. Lomax, 293 F.3d at 705 (explaining "a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted"; or "enable a drug trafficker to ensure that he collects during a drug deal," "serve as protection in the event that a deal turns sour," or "prevent a transaction from turning sour in the first place"). Here, the Lomax factors work against Petitioner: the guns were loaded, located in a car containing cocaine, and found pursuant to a search following the arrest of Petitioner and his co-defendants for the

15

sale of drugs. Id. at 705. Thus, the court finds that the firearms facilitated the crime. Petitioner's allegation that Lomax demonstrates his actual innocence is therefore without merit.[5]

Petitioner also cites Rosemond v. United States, 134 S. Ct. 1240 (2014) in an effort to demonstrate his actual innocence. (Doc. 88 at 20-22.) In Rosemond, the Supreme Court determined that a defendant, convicted of aiding and abetting a firearm offense under 18 U.S.C. § 924(c), must know beforehand that one of his confederates will be armed. 134 S. Ct. at 1243.[6]

---

[5] See, e.g., United States v. Magwood, 528 F. App'x 331, 332-33 (4th Cir. 2013) ("[I]t is reasonable to infer that the gun was being used in furtherance of a drug offense: it was easily accessible; it was loaded; and it was in close proximity to both drugs and drug profits discovered in the car and on Magwood's person."); Alexander v. United States, No. 3:04CR137, 2011 WL 52864, at *4 (W.D.N.C. Jan. 6, 2011) (unpublished) ("[P]olice found a Ruger .40 caliber semiautomatic pistol under the front seat of his car in close proximity to 13.9 grams of crack cocaine and $448.00 is [sic] U.S. currency. On these facts, Petitioner's possession of the gun clearly satisfies the elements of 18 U.S.C. § 924(c)(1).") (citations omitted).

[6] The Government argues that Rosemond is not retroactive to cases on collateral review. (Doc. 121 at 3.) Courts have disagreed on this issue. See, e.g., Montana v. Cross, 829 F.3d 775, 783-85 (7th Cir. 2016) (holding that Rosemond is retroactive), petition for cert. filed, (U.S. Dec. 16, 2016) (No. 16-775); Kerr v. United States, No. 5:08-CR-302-F-1, No. 5:14-CV-262-F, 2016 WL 958202, at *3, n.4 (E.D.N.C. March 9, 2016) (holding that Rosemond is retroactive, as conceded by the Government); Jackson v. United States, No. 3:15-cv-00106-MOC, 2015 WL 6455371, at *3 (W.D.N.C. Oct. 26, 2015) (same); but see Barnes v. United States, Nos. 5:09-CR-00158-F3, 5:13-CV-00533-F, 2016 WL 3453648, *4 (E.D.N.C. June 20, 2016) (holding that Rosemond is not retroactive, and citing cases); Outlaw v. United States, NO. 1:13CV153, NO. 1:09CR123, 2016 WL 1175250, at *4 (N.D.W. Va. Mar. 23, 2016) (same); Beale v. Andrews, No. 5:14-HC-2064-FL, 2015 WL 4066565, at *3 (E.D.N.C. July 2, 2015) (same); Cardena-Sosa v. United States, 2015 WL 2131306, at *9 (N.D.W. Va. May 6, 2015) (same); Harris v. Andrews, No. 5:14-HC-2061-D, 2014 WL 12615723, *1 (E.D.N.C. Dec. 18, 2014) (same); Whitener v. United States, No. 3:14-

16

Here, Petitioner contends that he did not have advance knowledge that his co-conspirators would bring firearms to the drug deal, so he cannot be guilty of aiding and abetting their possession of firearms in furtherance of a drug trafficking crime. (Doc. 88 at 18; Doc. 104 at 5-7.) But, Petitioner's contention is belied by the record. It shows that, in an effort to secure a two-level guideline reduction at sentencing for acceptance of responsibility, he admitted in a signed statement that he knew that his co-defendants would be bringing a firearm or firearms to the cocaine sale to protect the cocaine in question. (Doc. 118 (PSR), ¶ 26.) As noted above, at the sentencing hearing Petitioner said that he had reviewed the PSR, understood it, and had discussed it with his attorney. Defense counsel also stated he had reviewed the PSR with Petitioner. (Doc. 80 at 2.) The court then adopted the PSR in full. Furthermore, Petitioner has never objected to its contents. Because Petitioner had advance knowledge that his co-defendants would be bringing firearms to the drug sale, there is no Rosemond error here.

Petitioner tries to evade this conclusion by asserting now, for the first time, that he did not understand the contents of the

---

cv-00600-MOC, 2014 WL 6808789, at *2 (W.D.N.C. Dec. 2, 2014) (same). Because the court finds, for the reasons to follow, that Petitioner's claims fail even if the court assumes without deciding that Rosemond applies on collateral review, the court need not reach the question of retroactivity in this case.

PSR. (Doc. 104 at 5.) He contends that because he had a "less than rudimentary" grasp of oral and written English at both the time of his change of plea and at sentencing. (Id.) He argues that he did not understand what a PSR was, or what his PSR contained. (Id.) Petitioner contends that "It was his Court appointed interpreter [i.e., Dr. Margo Bender] [sic] duty to fully explain and articulate to [him] the exact contents of the PSR." (Id. (first brackets in original).) Petitioner continues, "Dr. Bender obviously failed egregiously in this regard, as Moya NEVER admitted to having advance knowledge that any firearm would be present during the drug transaction." (Id. (emphasis in original).) But Petitioner's efforts to rebut the PSR are unpersuasive, as they are at odds with the statements both he and his counsel made at sentencing.[7]

---

[7] See, e.g., Medina v. United States, No. 7:10-CR-1103-04, 2015 WL 12656931, at *8 (S.D. Tex. Sept. 7, 2015) (unpublished) ("Other than the conclusory allegations in his motion, Movant offers nothing to rebut the statements he made during the sentencing proceeding or the affidavit from his defense counsel. Movant's bare allegations are insufficient to undermine the presumption of verity that adheres to his statements in open court or to establish a viable claim for ineffective assistance of counsel.") (citations omitted), report and recommendation adopted, 2015 WL 12657104 (S.D. Tex. Oct. 2, 2015) (unpublished); Murphy v. United States, No. CIV. 08-CV-224-JD, 2009 WL 103604, at *2 (D.N.H. Jan. 14, 2009) (unpublished) ("[T]he court asked Harrington at the sentencing hearing whether he reviewed the PSR with Murphy, and he replied that he had . . . Murphy was present at his sentencing, did not object to his counsel's statement, and stated to the court that he had nothing further to add. Murphy has failed to show, therefore, that his counsel's representation fell below an objective standard of reasonableness because his claims that Harrington failed to review the PSR with him and that he had inadequate time to review the PSR are contradicted by the

But, even if the aiding and abetting aspect of the § 924(c) charge were found to be lacking under Rosemond, Petitioner is still guilty of the gun charge to which he pled guilty. Under Pinkerton v. United States, 328 U.S. 640 (1946), "a defendant is 'liable for substantive offenses committed by a co-conspirator when their commission is reasonably foreseeable and in furtherance of the conspiracy.'" United States v. Blackman, 746 F.3d 137, 141 (4th Cir. 2014) (quoting United States v. Dinkins, 691 F.3d 358, 384 (4th Cir. 2012)). As the Fourth Circuit has explained, "[t]he idea behind the Pinkerton doctrine is that the conspirators are each other's agents; and a principal is bound by the acts of his agents within the scope of the agency." Id. (citation, quotation omitted). Thus, "so long as the partnership in crime continues, the partners act for each other in carrying it forward." Id. (citing Pinkerton, 328 U.S. at 646). Pinkerton liability is analogous to aiding-and-abetting liability, insofar as it "merely represents an alternative form of vicarious liability." Blackman, 746 F.3d at 141. Pinkerton liability suffices to support a

record."); Jones v. United States, No. 5:03CR37-V, 2008 WL 394821, at *6 (W.D.N.C. Feb. 11, 2008) (unpublished) ("Petitioner stated she had reviewed the PSR with her attorney and that she had no objection to its contents. Further, she stipulated that the PSR provided an accurate factual basis for the offense. Given her admissions, Petitioner cannot now establish that her attorney was ineffective for failing to challenge the PSR. The record of Petitioner's admissions regarding the PSR does not support her claim that her counsel was ineffective for failing to challenge the PSR.").

19

defendant's conviction, even where the quantum of proof on an aiding-and-abetting theory may be lacking.  Id. (declining to address aiding and abetting liability as an alternative basis of conviction after finding defendant's conviction to be appropriate under Pinkerton); Jackson v. United States, No. 3:15-CV-00106-MOC, 2015 WL 6455371, at *6 (W.D.N.C. Oct. 26, 2015) (unpublished) ("Pinkerton liability suffices to support a defendant's conviction, even where the quantum of proof on an aiding-and-abetting theory may be lacking.").

In Blackman, for example, the Fourth Circuit declined to address liability under an aiding-and-abetting theory but still upheld under Pinkerton the defendant's § 924(c) conviction for brandishing a firearm during and in relation to a crime of violence.  Blackman, 746 F.3d at 141-42.  It held that the Government's evidence "clearly demonstrated that [the defendant] not only joined the alleged conspiracy, but that the use of a firearm was both reasonably foreseeable to him and in furtherance of the goals of the conspiracy."  Id.

The Fourth Circuit has confirmed that Pinkerton remains a viable theory of § 924 liability after Rosemond.  As a result, the Government can convict under § 924 without proof of actual knowledge as long as it can prove that the defendant engaged in a criminal conspiracy and the commission of the gun offense was

20

reasonably foreseeable and in furtherance of the conspiracy. United States v. Hare, 820 F.3d 93, 104-05 (4th Cir. 2016) (dismissing challenge to § 924 convictions after trial court failed to instruct jury on Rosemond's knowledge requirement, as defendants' conspiracy allowed liability under Pinkerton).

Here, both of Petitioner's co-conspirators pled guilty to, and were convicted of, conspiracy to distribute cocaine as well as the possession of a firearm in furtherance of that crime under § 924(c). (See United States v. Javier Sanchez-Garcia, 1:09-cr-00329-2, Docs. 3, 75 and 12/10/2009 Minute Entry; United States v. Hermino Alcantar-Ramirez, 1:09-cr-00329-3, Docs. 3, 74, 12/08/2009 Minute Entry.) As noted, Petitioner, through counsel, admitted that it was reasonably foreseeable that his co-conspirators would bring firearms to the drug deal in question, the consummation of which was the goal of the conspiracy. (Doc. 79 at 21-22.) Thus, regardless of the aiding-and-abetting aspect here, Petitioner remains liable for the substantive § 924(c) offense itself.

Petitioner attempts to evade this conclusion by asserting that the interpreter at his Rule 11 hearing (Dr. Lunsford), who was different from the interpreter at his sentencing hearing (Dr. Bender), was also deficient. Specifically, Petitioner alleges

> he was not properly apprised of the elements
> for a conviction under 924(c), by his counsel,
> nor was [sic] the proceedings properly

21

> interpreted for him to understand either the
> theory of aiding and abetting and/or
> reasonably foreseeable standards of
> liability. . . . The Court appointed
> interpreter failed to properly explain and
> articulate to Petitioner the elements
> necessary for a conviction under § 924(c),
> and/or explain to him the words used by his
> counsel during the Rule 11 hearing, in
> admitting his guilt on the charged offenses.

(Doc. 124 at 2-3.) Petitioner likewise contends in an affidavit that at no point prior to pleading guilty did he know his co-defendants were in possession of firearms. (Doc. 125 at 1.) He further asserts that he was never made aware by his counsel or interpreters "what the words aiding and abetting or foreseeable meant in terms of [him] pleading guilty to the 924(c) Count." (Doc. 125 at 1-2.)

These contentions are insufficient to warrant any form of relief, including an evidentiary hearing. Petitioner stated under oath at his Rule 11 hearing that he had fully discussed the charges with his attorney. (Doc. 79 at 7.) He also affirmed that he had been given sufficient time to speak with his attorney about his case, and that they had discussed possible defenses. (Id.) He further stated that he was fully satisfied with the services of his attorney. (Id.) The court also explained the elements of the offenses, including aiding and abetting liability under § 2, to Petitioner, who was specifically asked "Do you understand the

22

elements of the offense as I have described them to you, sir," to which Petitioner replied, "Yes." (<u>Id.</u> at 19-21.) Petitioner then pled guilty to the offenses. He also stated that he was pleading guilty to these offenses because he was in fact guilty and that he understood that by pleading guilty, he was admitting each of the elements of the offenses. (<u>Id.</u> at 21.) The court found that Petitioner was competent and capable of entering an informed plea, that he was aware of the nature of the charges and the consequences of the plea, and that his plea of guilty was knowing and voluntary. (<u>Id.</u>)

There is nothing extraordinary about these circumstances that would permit Petitioner to repudiate, years later, the statements he made during his Rule 11 hearing. Nor is there any evidence in the record to support Petitioner's allegations beyond his own vague and conclusory assertions that two different interpreters and his attorney comported themselves incompetently. Vague and conclusory assertions do not entitle a petitioner to either an evidentiary hearing or any other form of relief. <u>See</u> <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992), <u>abrog'n on other grounds recog'd</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999).

The court therefore finds that Petitioner is not innocent of the § 924(c) conviction and that his guilty plea was knowingly and intelligently made. Consequently, his motion for relief fails,

23

and his motion for an evidentiary hearing (Doc. 105) will be
denied.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that Petitioner's motion for an
evidentiary hearing (Doc. 105) is DENIED.

IT IS FURTHER ORDERED that Petitioner's motion to vacate, set
aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc.
87) be DENIED and the action be DISMISSED. Finding neither a
substantial issue for appeal concerning the denial of a
constitutional right affecting the conviction nor a debatable
procedural ruling, a certificate of appealability will not issue.

A Judgment dismissing this action will be entered
contemporaneously with this Order.

<pre>
                         /s/   Thomas D. Schroeder
                         United States District Judge
</pre>

March 27, 2017